# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

FELIX ALBERTO J. M.,

Petitioner,

v.

TODD BLANCHE, *Acting U.S. Attorney General*; DAREN K. MARGOLIN, *Director for Executive Office for Immigration Review*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; DAVID J. VENTURELLA, *Acting Director of Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; and ERIC TOLLEFSON, *Kandiyohi County Sheriff*,

Respondents.

Case No. 26-cv-2944 (LMP/DLM)

**ORDER GRANTING
HABEAS PETITION**

---

David L. Wilson and Gabriela Sophia Anderson, **Wilson Law Group, Minneapolis, MN**, for Petitioner.

Pedro del Valle, IV, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

---

[1]    When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Eric Tollefson, the Kandiyohi County Sheriff, has not participated in these proceedings.

Petitioner Felix Alberto J. M.[2] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention.  For the following reasons, the petition is granted, and the Court orders Felix's release from detention.

## BACKGROUND

Felix is a native and citizen of Mexico who has lived in the United States since 2012 and has remained law-abiding during his time in the United States.  ECF No. 1 ¶¶ 27–28; ECF No. 6-1 at 2.  On June 11, 2026, Felix was working at a construction site in Bemidji, Minnesota.  ECF No. 6 ¶ 5.  That same day, agents with Immigration and Customs Enforcement ("ICE") conducted a "targeted enforcement operation" at the worksite, at which ICE believed "multiple subjects" were working without legal authorization.  ECF No. 6-1 at 2.  As ICE officers were conducting surveillance near the worksite, the workers "scattered and ran."  *Id.*  ICE agents "chased down and apprehended" the workers, including Felix.  *Id.*  ICE officers then issued and served an I-200 administrative arrest warrant on Felix.  *Id.*; ECF No. 6 ¶ 5.  Felix remains in immigration detention at the Kandiyohi County Jail in Willmar, Minnesota.  ECF No. 1 ¶ 10.

On June 13, 2026, Felix brought a petition for a writ of habeas corpus, alleging that his arrest and detention are unlawful.  ECF No. 1.  Felix alleges that the Government violated federal statutes and regulations governing warrantless arrests, and that his continued detention without a bond hearing violates his due process rights under the Fifth

---

[2]    The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases.  No disrespect is intended in doing so.

Amendment. *Id.* ¶¶ 65–99. Felix seeks release from custody or, alternatively, a bond hearing. *Id.* at 24. The Court ordered the Government to respond to Felix's petition no later than June 22, 2026, with any reply from Felix due by June 29, 2026. ECF No. 3. The Court also asked the parties whether an evidentiary hearing would be helpful in resolving the petition. *Id.* Both the Government and Felix timely provided that briefing. ECF Nos. 5, 7. Neither party requested an evidentiary hearing. ECF No. 5 at 15; *see generally* ECF No. 7.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Felix asserts that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests. ECF No. 1 at 24. As a threshold matter, the Government submits that Felix's arrest was effectuated "concurrent" with a warrant. ECF No. 5 at 10. The record, although fuzzy, does not indicate as much: instead, the record shows that at the time ICE agents arrested Felix,[3] no administrative warrant had

---

[3]    As explained below, Felix was arrested for purposes of 8 U.S.C. § 1357(a)(2) when he was first apprehended by ICE officers.

yet issued for his arrest. ECF No. 6 ¶ 5; ECF No. 6-1. That observation is further supported by the fact that the warrant lists "statements made voluntarily" by Felix "and/or other reliable evidence" as providing probable cause for an arrest, ECF No. 6-2 at 1, meaning that the warrant necessarily could not have been issued before Felix was apprehended and spoken to. Without an administrative warrant in hand at the time of Felix's arrest, the arrest must be judged by the warrantless-arrest framework of 8 U.S.C. § 1357(a)(2). *See Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026). Indeed, the Government spends the bulk of its briefing on the argument "Respondents' Warrantless Arrest Was Proper and Thoroughly Memorialized by the Arresting Officers." ECF No. 5 at 9–13.

"As a general rule, it is not a crime for a removable alien to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Instead, the "federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Id.* Relevant here, 8 U.S.C. § 1226(a) allows the Attorney General to "exercise discretion to issue a warrant for an alien's arrest and detention." *Id.* But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.* at 408, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest."[4] 8 U.S.C. § 1357(a)(2). "Because the Fourth Amendment applies

---

[4] Although immigration officers do not need to issue a warrant to detain a noncitizen under 8 U.S.C. § 1225(b)(2)(A), warrantless arrests of individuals ultimately detained

to arrests of" undocumented individuals, "the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Based on the scant record provided by the Government, at the time ICE agents arrested Felix, they lacked probable cause to believe that he was in the United States in violation of the immigration laws. The probable-cause standard is "incapable of precise definition or quantification into percentages," but it nonetheless boils down to possessing a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). Probable cause must be "particularized with respect to the person to be searched or seized." *Id.* This means that ICE needed to have reasonable grounds to believe that *Felix* was here without lawful immigration status.

Here, there are no "particularized" facts in the record demonstrating that ICE agents believed Felix to be in the country without lawful immigration status. The Government asserts that it believed that "multiple subjects" at the construction worksite in Bemidji were in violation of the immigration laws, ECF No. 6-1 at 2, but the Government does not offer any evidence that ICE agents believed Felix to be one of those subjects.[5] That's fatal for

---

under 8 U.S.C. § 1225(b)(2)(A) must still comply with the requirements of 8 U.S.C. § 1357(a)(2). *See Muse v. Mullin*, No. 26-cv-4024-CJW-MAR, 2026 WL 1008532, at *2–3 (N.D. Iowa Apr. 14, 2026); *Francisco M. A.*, 2026 WL 1229701, at *2. The Government does not contend otherwise.

[5]    The relevant record consists of a sole paragraph in the I-213 titled Record of Deportable/Excludable Alien: "On June 11, 2026, ERO St. Paul Officers encountered [Felix] while conducting a Targeted Enforcement Operation in Bemidji, Minnesota. Officers identified a work site with multiple subjects believed to be residing and working in the United States illegally. While Officers were conducting surveillance in the area, the

the Government's assertion of probable cause because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search [or seize] that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

What's more, the Government's showing on this meager record does not meet the standards on which the Eighth Circuit and district courts in this Circuit have blessed warrantless arrests under 8 U.S.C. § 1357(a)(2). In those cases, law enforcement was aware of facts particularized to the arrestee—often offered by the arrestee themselves—indicating that the arrestee did not have lawful immigration status. *See United States v. Puebla-Zamora*, 996 F.3d 535, 538 (8th Cir. 2021) (probable cause established when arrestee admitted he did not have lawful immigration status); *Quintana*, 623 F.3d at 1241 (probable cause established when arrestee provided Mexican driver's license, conceded he was a Mexican national, and could provide no documentation of his legal status in the United States); *Jose Luis G. G. v. Noem*, No. 5:26-CV-05023-KES, 2026 WL 836807, at *2 (D.S.D. Mar. 26, 2026) (probable cause established when the arrestee "admitted his Mexican citizenship and lack of lawful status when he was encountered by immigration officers"); *Zhuang v. Bondi*, No. 1:25-cv-00201-CMS, 2026 WL 352872, at *2 (E.D. Mo.

---

subjects scattered and ran, including [Felix]. Officers chased down and apprehended [Felix] and the remainder of the subjects. Officers served [Felix] the I-200 and Officer Smith transported to the Kandiyohi County Jail for a direct ICE book." ECF No. 6-1 at 2.

It would be obvious to any criminal law practitioner that this paltry paragraph falls far short of what would be expected in a probable cause affidavit for an arrest warrant. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) (explaining that a warrant affidavit cannot include "wholly conclusory" statements but must instead provide a judge "with a substantial basis for determining the existence of probable cause"). It bears repeating that the quantum of proof for a warrantless arrest in the criminal and immigration context is the same: probable cause. *Quintana*, 623 F.3d at 1239.

Feb. 9, 2026) (probable cause established when arrestee admitted "that he was not legally present in the United States"). No such particularized evidence exists here—likely because ICE officers did not even speak to Felix until after he was arrested. *See* ECF No. 6-1 at 2.

That leaves the only piece of evidence that is arguably particularized to Felix: ICE's assertion that Felix "scattered and ran" while ICE officers were conducting surveillance on the worksite. ECF No. 6-1 at 2. As an initial matter, much detail is lacking in exactly what transpired when Felix purportedly "ran" and ICE officers "apprehended" him. It's not even clear from ICE's vague account whether Felix and the other workers "scattered and ran" *in response to* ICE's presence.

Even if the Court accepts that Felix ran in response to seeing ICE officers, that would at most establish reasonable suspicion, but *not* probable cause, to believe that Felix lacked lawful immigration status. The Supreme Court has explained that a person's unprovoked flight in a high crime area furnishes "reasonable suspicion" to conduct a "brief, investigatory stop," also known as a *Terry* stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion is a "less demanding standard than probable cause," but it "requires at least a minimal level of objective justification for making the stop." *Id.*

*Terry* stops are contemplated in immigration enforcement. 8 C.F.R. § 287.8(b)(2) (authorizing ICE agents to "briefly detain" a person if they have "reasonable suspicion, based on specific articulable facts, that the person being questioned is" in the United States without lawful status); *see United States v. Sanchez-Velasco*, 956 F.3d 576, 581 (8th Cir. 2020). However, a *Terry* stop may become an arrest when the "officers' conduct is more

7

intrusive than necessary for an investigative stop." *United States v. Bloomfield*, 40 F.3d 910, 916–17 (8th Cir. 1994) (citation omitted). And courts have generally held that a person's unprovoked flight from law enforcement, while perhaps providing reasonable suspicion for a *Terry* stop, does not alone create probable cause for an arrest. *See, e.g.*, *Sang v. City of St. Paul*, No. 09-cv-455 (RHK/SRN), 2010 WL 2346600, at *4 (D. Minn. June 8, 2010) ("[F]light alone is insufficient to establish probable cause to arrest."); *United States v. Navedo*, 694 F.3d 463, 474 (3d Cir. 2012) ("[U]nprovoked flight, without more, can not elevate reasonable suspicion to detain and investigate into the probable cause required for an arrest."); *United States v. Green*, 670 F.2d 1148, 1152 (D.C. Cir. 1981) ("[F]light alone is insufficient to give the police probable cause to arrest."); *United States v. Bowles*, 625 F.2d 526, 535 (5th Cir. 1980) ("[F]light alone will not provide probable cause that a crime is being committed."); *United States v. Rubio*, 404 F.2d 678, 680 (7th Cir. 1968) ("[F]light alone is insufficient to create probable cause for an arrest."); *cf. Wong Sun v. United States*, 371 U.S. 471, 482–84 (1963) (holding that flight alone was "ambiguous conduct" not capable of justifying probable cause).

The Government claims that Felix was subjected only to a *Terry* stop, ECF No. 5 at 11, while Felix claims that he was arrested, ECF No. 7 at 16–17. If the Government is right, Felix's flight likely justified his detention for a *Terry* stop, but if Felix is right, then ICE officers, witnessing only Felix's flight, lacked probable cause to arrest him.

Answering this question is complicated by the Government's dismally vague account of Felix's encounter with ICE officers. All the Government tells the Court is that officers "chased down and apprehended" Felix, then "served" him with an administrative

8

warrant and transported him to the Kandiyohi County Jail for "further processing."  ECF No. 6 ¶ 5; ECF No. 6-1 at 2.  After reviewing the limited 10-page record, the Court concludes that Felix has the better argument.[6]

Instructive is ICE's use of the term "apprehended" to describe officers' initial encounter with Felix.  *See id.*  An "apprehension" does not connote a "brief, investigatory stop."  *Wardlow*, 528 U.S. at 123.  Rather, the term "apprehension" suggests a more sustained, intrusive interaction that is akin to a custodial arrest.  For example: if a news network reports that a fugitive has been "apprehended," no one imagines officers are still making small talk with the fugitive on the shoulder of a highway while deciding what to do next.  Rather, the public expects that when a fugitive is "apprehended," the chase is over, the option to walk away has evaporated, and the fugitive has been detained with handcuffs.

Not surprisingly, then, courts and secondary authorities have referred to "arrest" and "apprehension" interchangeably.  *See Arrest*, Black's Law Dictionary (12th ed. 2024) (defining "arrest" as "the apprehension of someone for the purpose of securing the administration of the law"); 4 William Blackstone, *Commentaries* 286 (defining "arrest"

---

[6]    This may well have been a case where an evidentiary hearing would have shed better light on the circumstances of Felix's interactions with ICE officers.  For example, the ICE officers present during Felix's arrest could have testified as to why they suspected the construction worksite to include undocumented workers, whether Felix was one of those workers, and the circumstances of Felix's arrest (including the chain of events from his initial interaction with ICE to the issuance of the administrative warrant to his detention at the Kandiyohi County Jail).  But the Government disclaims a need for an evidentiary hearing in this case, ECF No. 5 at 15, so the Court holds the Government to its word and is limited to the record before it.

as "the apprehending or restraining of one's person, in order to be forthcoming to answer an alleged or suspected crime"); *Dundon v. Kirchmeier*, 85 F.4th 1250, 1256 (8th Cir. 2023) (using the terms "arrest" and "apprehend" interchangeably); *United States v. Harris*, 29 M.J. 169, 170 (C.M.A. 1989) (explaining that an "apprehension" in military law is "equivalent of an arrest in civilian practice"). An ordinary English speaker reading ICE's account of "apprehending" Felix would therefore understand that officers were detaining him in a more conclusive way than a mere investigatory stop.

Bolstering that conclusion is the fact that the Government's terse account of Felix's interaction with ICE agents does not bear the hallmarks of an ordinary *Terry* stop. Typically, the point of a *Terry* stop is to "briefly question" a suspect to determine if further investigation is warranted. *United States v. Banks*, 553 F.3d 1101, 1104–05 (8th Cir. 2009). In the immigration context, that might include questions to determine the person's name and immigration status. *See Sanchez-Velasco*, 956 F.3d at 581 (holding questions about noncitizen's identity documents and immigration status "were authorized" by 8 C.F.R. § 287.8(b)(2)). But here, the Government's account does not indicate that ICE officers asked Felix any questions when they approached him. Rather, the Government simply states that after Felix was "apprehended," ICE officers "served [Felix] with a Form I-200, Warrant for Arrest, and transported him to Kandiyohi County Jail for further processing." ECF No. 6 ¶ 5; *see* ECF No. 6-1 at 2. That chain of events—handing an arrest warrant to Felix after apprehending him—suggests that when ICE agents first engaged with Felix,

they considered his arrest a *fait accompli*.[7]  Because ICE's purpose in "apprehending" Felix was to take him into custody—not merely to investigate suspected wrongdoing—the Court concludes that Felix was arrested, not subjected to a *Terry* stop.

Because Felix was subject to an arrest by ICE officers, those officers needed probable cause to believe that Felix was in violation of the immigration laws.  *Quintana*, 623 F.3d at 1239.  But as explained above, probable cause to arrest is not established when the only particularized evidence against the suspect is his unprovoked flight.  That's all the officers had here, however.  Accordingly, because ICE arrested Felix without the requisite probable cause under 8 U.S.C. § 1357(a)(2), he is entitled to habeas relief.  That relief is release from custody.  *See Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *4 (D. Minn. June 16, 2026).[8]

---

[7]  To be sure, the warrant that was eventually issued to Felix stated that he "voluntarily" made "statements" that indicated that he was in the United States without lawful status (or, that there was some other "reliable evidence" [whatever that means] that supported probable cause for Felix's arrest).  ECF No. 6-2.  But the record provides no indication about how, or when, any statements by Felix were made, including if they were made after Felix was already placed under arrest.  In fact, the only evidence of a statement made by Felix conceding that he was not a citizen is documented on June 12, 2026—one day after his arrest.  ECF No. 6-1 at 2.  Given that the Government must prove probable cause for a warrantless arrest, *see United States v. Golden*, 418 F. Supp. 3d 416, 418 (D. Minn. 2019), the Court cannot conclude from this lack of evidence here that the Government learned of Felix's immigration status while questioning him during a mere *Terry* stop, as opposed to after a full-blown, custodial arrest.

[8]  Because the Court grants Felix release from custody on statutory grounds, the Court need not address Felix's constitutional or regulatory arguments.

11

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY ORDERED THAT:**

1. Felix's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2. The Government is **ORDERED** to release Felix from custody without conditions and with all personal property by no later than 5:00 p.m. on **July 3, 2026**;

3. The Government is **ORDERED** to file a status report certifying its compliance with this Order by no later than **July 6, 2026**; and

4. If the Government seeks to impose conditions of release on Felix or to retain Felix's property, the Government's status report must include: (a) the conditions imposed or the property retained; and (b) the legal basis on which the conditions are imposed or the property is retained.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 2, 2026                          *s/Laura M. Provinzino*
                                             Laura M. Provinzino
                                             United States District Judge